UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN

| | |
|---|---|
| JENNIFER WALSH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ELANCO ANIMAL HEALTH, INC.,<br><br>Defendant. | Case No.: 21-cv-02929<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jennifer Walsh ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to herself and on information and belief as to all other matters, by and through her undersigned counsel, bring this class action complaint against Defendant Elanco Animal Health, Inc. ("Defendant" or "Elanco").

## NATURE OF THE ACTION

1. This consumer class action arises out of Defendant's deceptive marketing practices in connection with its sale of Seresto flea and tick collars for dogs and cats (the "Product") throughout the United States. Elanco actively markets and sells the Product as being acceptable for both cats and dogs in regular, everyday use. In reality, though, the Product has been implicated in nearly 1700 pet deaths since 2012, 907 incidents of human injury, and more than 75,000 incident reports to the Food and Drug Administration.

1

2. Earlier this month, the United States House of Representatives Subcommittee on Economic and Consumer Policy announced that, as a result of document recently disclosed by the FDA, it had opened a probe into Elanco's sales and marketing practices related to the Product, stating that Elanco (and before that, Bayer Animal Health, who was purchased by Elanco in 2019) has never put warnings on the Product that it could be hazardous to the health of both pets and humans.

3. Further, the Subcommittee on Economic and Consumer Policy stated that it believes the number of pet deaths attributable to the Product is, in actuality, much higher than 1700.

4. As a result, Elanco markets and sells a product that is inherently dangerous to pets and humans, but does so without including any warnings on the Product. This is an omission of material fact under the New York Deceptive Business Acts and Practices Law as well as a breach of the implied warranty of merchantability.

## JURISDICTION AND VENUE

5. The Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiff's claims within this District, does substantial business in this District, and has caused harm to Class members residing within this District.

## PARTIES

7. Plaintiff Jennifer Walsh is a citizen of the State of New York, residing in the Bronx. On or about May 30, 2019, Plaintiff Walsh purchased a Seresto Flea and Tick Collar for Dogs over 18 Pounds from Chewy.com for $57.99. On or about June 7, 2019, Plaintiff Walsh placed the collar on her dog, Ollie. Ollie swiftly sickened and then died on July 15, 2019. Plaintiff is not aware of any other condition or circumstance that would have caused the death of her dog. Plaintiff now believes that the use of the Product is what killed her dog. Had Plaintiff Walsh known of Defendant's deceptive and misleading practices, she would not have bought the Product, or she would have paid less for it.

8. Defendant Elanco Animal Health, Inc. is an Indiana limited liability corporation with its principal place of business at 2500 Innovation Way, Greenfield, Indiana, 46140. At all relevant times, Defendant has owned, marketed, and sold the Product at issue.

9. On August 3, 2020, Elanco purchased Bayer Animal Health from Bayer AG for $6.89 billion. As part of its acquisition, Elanco acquired the entire portfolio of products in Bayer Animal Health from Bayer AG, including the Product. On information and belief, Elanco acquired all assets and liabilities of Bayer Animal Health at the time of the acquisition.

**FACTUAL ALLEGATIONS**

**Facts About Defendant's Collars**

10. Defendant markets and sells Seresto Flea and Tick collars throughout the United States. Defendant's packaging, as shown below, shows photographs of cats and dogs wearing Defendant's flea collars, clearly demonstrating that they are fit for normal wear and use for pets.



Seresto Flea and Tick Collar for Large Dogs   Seresto Flea and Tick Collar for Small Dogs   Seresto Flea and Tick Collar for Cats

11. Nowhere on the Product packaging is there a warning that it may sicken or kill pets or humans.

12. While Defendant acquired the Product as part of its acquisition of Bayer Animal Health in 2020, the Product has been on the market since 2012.

13. Like most flea and tick collars, the Product works by releasing small amounts of pesticide onto the pet it is attached to for months at a time.

14. On March 2, 2021, USA Today and the Midwest Center for Investigative Reporting reported that thousands reports of pet illnesses, deaths, and human deaths had been submitted to the FDA with regard the Product going all the way back to its launch in 2012.[1]

15. One retired FDA scientist noted that "the collars have the most incidents of any pesticide pet product she's ever seen."[2]

16. In fact, over a nine-year period, the FDA logged 1698 pet deaths and more than 75,000 complaints of pet injury related to the collars.[3]

---

[1] *See* https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/, last accessed March 24, 2021.
[2] *Id.*
[3] *Id.*

17. Additionally, the same FDA document request by USA Today and the Midwest Center for Investigative Reporting noted that 907 humans had reported illness from the collars.[4]

18. On March 18, 2021, The House Subcommittee on Consumer and Economic Policy called on Elanco to recall all Seresto flea and tick collars and issue refunds to customers.[5]

19. As part of this call, The House Subcommittee on Consumer and Economic Policy stated that it believes the number of illnesses and pet deaths attributable to the Product is actually much higher than the number of logged FDA complaints.[6]

20. Elanco has refused, stating in part that, "the incident report rate for all adverse events related to Seresto in the U.S. has been below 0.3%."[7]

21. However, even taking Defendant's claim at face value, that means that a pet wearing a Seresto Flea and Tick collar still stands at least a 1 in 333 chance of suffering an "adverse event", such as becoming sick or dying. This information is not disclosed on the Product's packaging.

22. Nonetheless, complaints to the FDA regarding the Product have been, on a yearly basis, more than thirty times higher for Seresto collars than for the next-most complained-of collar. The number of complaints of pet deaths have been, on a yearly basis, ten times higher for Seresto than for the next-most complained-of collar.[8]

---

[4] *See* https://www.documentcloud.org/documents/20473297-epa-hq-opp-2016-0031-0031, last accessed March 24, 2021.
[5] *See* https://www.usatoday.com/story/news/investigations/2021/03/18/congressional-subcommittee-seeks-recall-seresto-flea-tick-collar/4759904001/, last accessed March 24, 2021.
[6] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-03-17.RK%20to%20Lockwood-Taylor-Bayer%20re%20Pet%20Collars.pdf, last accessed March 24, 2021
[7] https://www.elanco.com/insights/elanco-stands-behind-seresto, last accessed March 24, 2021.
[8] *See* https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/, last accessed March 24, 2021.

23. Additional reporting has indicated that Seresto flea and tick collars are the only flea and tick collars on the market which contain the pesticide flumethrin.[9]

24. Further, the other pesticide in Seresto flea collars, imidacloprid, has been banned for outdoor use in the European Union and have been connected to massive butterfly and bee die-offs.[10]

25. The nonprofit Illinois Newsroom has further reported that:

> However, a 2012 Bayer study found they have a "synergistic effect," meaning they are more toxic together on fleas. The study found that the "unique pharmacological synergism" works as quickly as six hours to prevent ticks from attaching and feeding, preventing disease transmission.
>
> Additionally, eight companion animal safety studies were conducted by Bayer looking at the effect of Seresto collars on domestic cats and dogs. The EPA used these studies to approve Seresto. The California Department of Pesticide Regulation took issue with the validity of two of the studies but approved the collars anyway.[11]

26. Taken together, the Product presents a clear risk to both pets and humans, once which Elanco itself acknowledges when recognizing a 1-in-333 adverse event occurrence, as stated *supra*.

27. Defendant had a duty to warn Plaintiff and members of the Class that placing these collars on cats and dogs presents a risk of injury or death, not only in pets, but in humans as well.

**Facts Specific to Plaintiff**

28. Plaintiff's dog Ollie was born on or around March 27, 2017.

29. As stated *supra*, Plaintiff purchased her collar on or around May 30, 2019.

30. Plaintiff first placed the collar on her dog on or around June 7, 2019.

---

[9] https://illinoisnewsroom.org/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/, last accessed March 24, 2021.
[10] *Id.*
[11] *Id.*

31. Plaintiff first took her dog to the veterinarian for a medical concern on June 14, 2019, because Plaintiff's dog had lost appetite, vomited, fallen down the stairs, was circling, and had developed a head tilt. Plaintiff's dog was referred to a veterinary neurologist, and no potential source of illness beyond the Seresto collar was noted by the veterinarian.

32. Plaintiff's dog was prescribed medication at the June 14, 2019 visit which did not alleviate Plaintiff's dog's condition.

33. Plaintiff retuned to the veterinarian on July 3, 2019 and was prescribed a new medication for the same condition. Plaintiff's dog continued to sicken following the July 3, 2019 visit.

34. Plaintiff returned again to the veterinarian on July 15, 2019 for the same condition. At that time, Plaintiff's dog was admitted to the veterinary hospital. Plaintiff's dog died that night.

35. Plaintiff's dog was young and healthy prior to placing the collar on her dog, and Plaintiff knows of no other condition or reason that her dog would have sickened and died.

## CLASS ALLEGATIONS

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a Class defined as follows (sometimes referred to as the "Nationwide Class"):

> All persons in the United States and its territories who purchased, other than for resale, Seresto Flea and Tick Collars during the Class Period.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Class; and (iii) the Judge presiding over this action.

37. Alternatively, Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following subclass:

All persons in the State of New York who purchased, other than for resale, Seresto Flea and Tick Collars during the Class Period.

Excluded from the subclass are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all subclass members that timely and validly request exclusion from the subclass; and (iii) the Judge presiding over this action.

38. The claims do not include personal injury claims.

39. The Class and the Subclass are sometimes collectively referred to as the "Class".

40. Certification of Plaintiff's claims for class-wide treatment are appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. The members of the Class are so numerous that joinder of the Class members would be impracticable.

42. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   A. Whether Defendant engaged in the conduct alleged;

   B. Whether Defendant omitted, suppressed, or concealed material facts in the marketing and sales of the Product;

   C. Whether Plaintiff and the Class members paid for a product that they would not have purchased or would have paid less for had they known the material facts omitted, suppressed, or concealed by Defendant;

   D. Whether Plaintiff and the Class members have been damaged and, if so, the measure of such damages;

   E. Whether Defendant unjustly retained a benefit conferred by Plaintiffs and the Class members; and

F.     Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

43.     Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff and the Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all Class members.

44.     Plaintiff is adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

45.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendant has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiff and the Class members caused by Defendant's continuing misconduct.

46.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members

could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Implied Warranty
### (By Plaintiff on Behalf of the Nationwide Class)

47.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48.    Plaintiff brings this claim individually and on behalf of the members of the Class.

49.    Defendant, as the designer, manufacturer, marketer, and/or distributor, impliedly warranted that the Product was fit for its intended purpose in that the Product was safe for use with cats and dogs. Defendant did so with the intent to induce Plaintiff and proposed Class and members to purchase the Products.

50.    Defendant breached its implied warranty because the Product does not have the characteristics or benefits as promised, as described herein above.

51.    As the manufacturer of the Product, Defendant had or should have had actual knowledge of the breach/misrepresentations regarding the Products, including the specific product purchased by the Plaintiff.

52.    Plaintiff and proposed Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Product or would not have

paid as much for the Product if they had known the true facts; (b) they purchased and paid more for the Product due to the implied warranties; (c) the Product did not have the quality or value as impliedly warranted; and (d) they also suffered loss of chattel as a result of Defendant's breach.

## SECOND CLAIM FOR RELIEF
**The New York Deceptive Business Acts and Practices Law, N.Y. G.B.L. § 349 *et seq.***
**(By Plaintiff on Behalf of the New York Subclass)**

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

54. GBL § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater."

55. GBL § 349(h) further provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he court may award reasonable attorney's fees to a prevailing Plaintiffs."

56. Defendant's design, testing, manufacture, distribution, marketing, advertising, labeling, and sale of the Product constitutes "business, trade or commerce" under GBL § 349(a).

57. Defendant's conduct violates GBL § 349 because Defendant engaged in the deceptive acts and practices described above.

58. Defendant's deceptive conduct and its omissions regarding the Product, including its risk of sickening or killing pets or humans, are facts that a reasonable person would have considered material in deciding whether or not to purchase the Product.

59. Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

60. Plaintiff and the other Class members justifiably acted or relied to their detriment upon Defendant's omissions of fact, as evidenced by Plaintiff and the other Class members' leasing and purchase of the Product.

61. Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Class.

62. Had Defendant disclosed all material information regarding the Product to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased the Product or would have paid less to do so.

63. Defendant's deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

64. Defendant's actions impact the public interest because Plaintiff and the members of the Class have been injured in exactly the same way as millions of other consumers by Defendant's deceptive acts and practices as described herein.

65. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members would not have purchased the Product or would have paid less for the Product had Defendant disclosed the truth about the Product's hazardous nature.

66. Defendant's violation of GBL § 349 was willful and knowing. Defendant knowingly and willfully marketed the Product as safe for ordinary use while knowing they were not. Defendant, through its willful and knowing deceptive acts and practices, as detailed above, has willfully and knowingly exposed Plaintiff and the Class to the risk of serious injury and death, and continue to do so by virtue of having failed to issue a recall.

67. As a direct and proximate result of Defendant's conduct in violation of GBL § 349, Plaintiff and the members of the Class have been injured in an amount to be proven at trial, with a statutory minimum of fifty dollars per Class member. Because Defendant's violation was knowing and willful, Plaintiffs is entitled to treble damages under GBL § 349(h).

68. Plaintiffs also seek injunctive relief, including requiring Defendant to engage in a state of the art notice program to notify purchasers of the hazardous nature of the Product.

69. Additionally, pursuant to GBL § 349, Plaintiff and the Class seek attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (By Plaintiff on Behalf of the Nationwide Class)

70. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the Class.

72. Defendant has been unjustly enriched to Plaintiffs' and the Class members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiffs and the Class members who relied on Defendant's representations regarding the nature of the Product and paid a premium price for Defendant's Product as a result.

73. Defendant's unlawful and wrongful acts, including the omission, suppression, or concealment of levels of the hazardous nature of the Product, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

74. Plaintiff and the Class members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

75. Defendant's retention of the benefits conferred by Plaintiff and the Class members would be against fundamental principles of justice, equity, and good conscience.

76. Plaintiff and the Class members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Class members.

77. Plaintiff and the Class members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiffs and the Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B. Appointing Plaintiff as Class Representative and Plaintiffs' Counsel as Class Counsel;

C. Awarding Plaintiff and the Class members damages and/or equitable relief as appropriate;

D. Awarding Plaintiff and the Class members declaratory and injunctive relief;

E. Awarding Plaintiff and the Class members restitution and disgorgement;

F. Imposing a constructive trust for the benefit of Plaintiff and the Class members on the unjustly retained benefits conferred by Plaintiff and the Class members upon Defendant;

G. Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

DATED: April 6, 2021

by: s/ *Kevin G. Cooper*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
Kevin G. Cooper
Betsy C. Manifold
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com
kcooper@whafh.com
manifold@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Tel.: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

***Counsel for Plaintiff and the Proposed Class***

whafhch56443